IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

BOBBY SOLOMON,

      Plaintiff,

v.                          CASE NO. 1:16-cv-297-WTH-GRJ

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security,[1]

      Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals to this Court from a final decision of the

Commissioner of Social Security (the "Commissioner") denying Plaintiff's

application for a period of disability and disability insurance benefits (DIB).

ECF No. 1.  The Commissioner has answered, and both parties have filed

briefs outlining their respective positions.  ECF Nos. 9, 21, 22.  For the

reasons discussed below, the undersigned recommends that the

Commissioner's decision be **AFFIRMED**.

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Accordingly, pursuant to Fed. R. Civ. P. 25(d), Nancy A. Berryhill should be substituted for former Acting Commissioner of Social Security, Carolyn W. Colvin, as Defendant in this matter. The Clerk is directed to correct the docket accordingly.

# I.  PROCEDURAL HISTORY

Plaintiff's application was filed on January 30, 2013, and alleged disability beginning July 26, 2004.  R. 19, 191-94.  His claim was denied initially and upon reconsideration.  At Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ") on February 25, 2015, at which Plaintiff and a vocational expert (VE) testified.  R. 33.  The ALJ issued an unfavorable decision on April 2, 2015; the Appeals Council denied review. R. 1-4, 19-29.

This appeal followed.  Plaintiff raises one issue for review:  Whether the ALJ failed to follow the Eleventh Circuit's credibility standard in determining that Plaintiff's testimony regarding his physical limitations was not credible.  ECF No. 21 at 25-34.

# II.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[2]  Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person

---

[2] *See* 42 U.S.C. § 405(g) (2000).

would accept as adequate to support the conclusion.[3]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[4] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[5]  However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[6]

---

[3] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[4] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[5] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[6] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[7] The impairment must be severe, making Plaintiff unable to do his previous work, or any other substantial gainful activity which exists in the national economy.[8]

The ALJ must follow five steps in evaluating a claim of disability.[9] First, if a claimant is working at a substantial gainful activity, he is not disabled.[10]  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.[11]  Third, if a claimant's impairments meet

---

[7] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2005) (All further references to 20 C.F.R. will be to the 2016 version unless otherwise specified.).

[8] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[9] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[10] 20 C.F.R. § 404.1520(b).

[11] 20 C.F.R. § 404.1520(c).

or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.[12]  Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.[13]  Fifth, if a claimant's impairments (considering his residual functional capacity ("RFC"), age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.[14]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[15]  The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[16]  The

---

[12] 20 C.F.R. § 404.1520(d).

[13] 20 C.F.R. § 404.1520(e).

[14] 20 C.F.R. § 404.1520(f).

[15] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); *see also* Doughty v. Apfel, 245 F.
3d 1274, 1278 (11th Cir. 2001).

[16] Doughty, 245 F.3d at 1278 n.2. In Doughty the court explained this burden shifting as follows:

In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform.  In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists.  The temporary shifting of the burden to the

Commissioner may satisfy this burden by pointing to the Medical-Vocational Guidelines (the "Grids") for a conclusive determination that a claimant is disabled or not disabled.[17]

However, the ALJ should not exclusively rely on the Grids when "the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion."[18]  In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[19]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of

---

Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

[17] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

[18] Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996). *See* Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[19] Walker, 826 F.2d at 1003.

jobs in the national economy that the claimant can perform.[20]  Such

independent evidence may be introduced by a Vocational Expert's ("VE")

testimony, but this is not the exclusive means of introducing such

evidence.[21]  Only after the Commissioner meets this burden does the

burden shift back to the claimant to show that he or she is not capable of

performing the "other work" as set forth by the Commissioner.

## III.  SUMMARY OF THE RECORD

### A. Findings of the ALJ

The ALJ determined that Plaintiff has the severe impairments of

obesity, history of sarcoidosis, and depression.  The ALJ found that

Plaintiff's osteoarthritis (particularly of the right knee) was not severe based

on diagnostic evidence and Plaintiff's testimony that he only took Aleve for

the condition.  Plaintiff does not have an impairment or combination of

impairments that meets or equals the listings.  The ALJ determined that

Plaintiff has the RFC to perform light work, except that he is limited to:

simple, routine tasks with no exposure to concentrated fumes, gases, or

---

[20] Wolfe, 86 F.3d at 1077-78.

[21] *See id.*

poorly ventilated areas; must be able to perform jobs from a standing or

seated position; and using a cane to ambulate.  R. 22-23.

The ALJ found that Plaintiff's testimony regarding the intensity,

persistence, and limiting effects of his impairments were generally credible,

but that his assertions were nevertheless not consistent with a finding that

Plaintiff was disabled.  In making this determination, and as discussed in

more detail below, the ALJ observed that the medical evidence reflected

unremarkable objective diagnostic testing with respect to Plaintiff's

complaints of knee pain, and that it appeared that Plaintiff's obesity was his

main problem because his weight (480 pounds at the time of the hearing)

affected his breathing, joints, and other areas.  Plaintiff admitted that his

doctors had advised him to lose weight.  Further, there was no opinion

from any treating provider regarding any functional limitations or opinions

of disability.  R. 26-27.

The ALJ found that Plaintiff is unable to perform his past relevant

work as a tile setter, which has a medium exertional level per DOT and

heavy exertional level as performed.  Relying on the testimony of a VE, the

ALJ found that for a person with Plaintiff's age, education, work

experience, and RFC, there are jobs that exist in substantial numbers in

the national economy that Plaintiff could perform such as ticket seller,

cashier II, and assembler.  The ALJ therefore found that Plaintiff was not

disabled.  R. 27-29.

## B.  *Medical Evidence*

Plaintiff's argument on appeal focuses on asserted limitations

stemming from osteoarthritis and pain in his knees, hips, and lower back,

as exacerbated by obesity.  ECF No. 21 at 29.  Although not specifically

addressed in his argument, Plaintiff suggests that the ALJ erred in finding

that osteoarthritis was a non-severe impairment because a state agency

consulting physician who reviewed Plaintiff's records identified Plaintiff's

primary diagnosis as "other unspecified arthropathy (joint disease) [with]

major joint dysfunction."  *Id*. at 6.  The relevant evidence may be

summarized as follows.

Plaintiff received surgery for a work-related knee injury in 2004, prior

to his amended onset date in 2005.  R. 247-78.  Plaintiff received treatment

through Southeastern Primary Care from 2005 through 2012 for various

healthcare needs, including right knee pain, but overall examination

findings were generally unremarkable.  R. 342-439.  X-rays of Plaintiff's

right knee in April 2007 revealed "no bone or joint abnormality."  R. 407.

He received a cane in July 2009, and complained of right knee pain in May

2010, but stated that he could not afford to see an orthopedist.  Plaintiff

reported that he was trying to lose weight.  R. 349-54.

X-rays of Plaintiff's right knee in March 2013 showed normal

mineralization, no fracture or dislocation, no definite joint effusion, well-

preserved joint spaces, and unremarkable soft tissues.  The impression

was "negative exam".  R. 446.

Plaintiff underwent a consultative examination by Robert Greenberg,

M.D., in March 2013.  Plaintiff complained of chronic right knee pain, for

which he took Aleve, and left knee pain manifesting one year previously.

Plaintiff related that he began experiencing arthritis in his spine and ankles

approximately four years previously, due mainly to his morbid obesity.

Plaintiff's weight at the time of Dr. Greenberg's exam was 473 pounds.  Dr.

Greenberg found decreased range of motion of the lumbar spine, and no

straight leg raising pain.  Plaintiff walked with a severe right leg limp and

was unable to walk without use of his cane.  He could not tandem walk or

walk on his heels or toes, and could not stoop.  There was no tenderness over the spine.  Plaintiff was unable to climb onto the examination table for testing leg strength and reflexes.  He had decreased range of motion of both knees and both hips, and full range of motion of all other extremities. There was no tenderness over the knees or hips.  Dr. Greenberg's diagnosis was severe osteoarthritis of the knees, lumbar spine, and ankles, aggravated by morbid obesity, as well as sleep apnea.  He opined that Plaintiff would be unable to perform work-related activities that required prolonged standing, walking, or bending.  R. 450-53.

State agency reviewing physician Dr. Irene Lipinski, M.D., reviewed Plaintiff's medical evidence in March 2013, including Dr. Greenberg's assessment.  Dr. Lipinski concluded that Plaintiff's primary diagnosis was obesity and his secondary diagnosis was sleep-related breathing disorder. She did not identify osteoarthritis as an impairment diagnosis.  She did afford great weight to Dr. Greenberg's opinion, and assessed Plaintiff with an RFC for light work with exertional limitations, including a limitation that he could stand and/or walk for a total of three hours and sit for six hours in an eight-hour workday.  R. 85-94.

The records were reviewed again upon Plaintiff's request for reconsideration to consider his allegation of disability due to depression. Dr. Harry Beecham, M.D. concluded that Plaintiff had a primary diagnosis of obesity and a secondary diagnosis of affective disorder.  R. 101.

## C.  *Hearing Testimony*

Plaintiff was 44 years old at the time of the hearing, and has a high school education.  Plaintiff last worked as a tile setter, but had not worked since October 2005 because pain in his knees hinders his ability to move around.  Plaintiff testified that he was 5'11" and weighed 480 pounds.  He testified that he has a thyroid condition for which he takes medication, but participates in treatment for losing weight including walking in the pool at the gym for thirty minutes twice a week.

Plaintiff testified that he does not shop for groceries.  He helps his wife with some household chores such as bagging up the trash and helping with dishes.  Most of his time is spent sitting watching TV, and moving around the house a little.  He can sit for 30 minutes to an hour at one time.  He also sits in the sun in the yard and watches his dogs.

Plaintiff sees a doctor for his thyroid medication but is unable to

afford other specialized treatment.  Plaintiff takes Wellbutrin, which has helped him.  He also uses an inhaler.

Plaintiff testified that he is unable to return to the workforce because of difficulty moving and being unable to do the things he used to do.  He has tried to force himself to do some things, but then becomes depressed.  As an example, he testified that he used to be able to kneel to take the trash out, but can't do those things as well as he could before his "injury . . . [to his] lung function."  He gets out of breath and has to sit.

When asked by the ALJ whether he could perform a job selling movie tickets, Plaintiff responded "sure, I think I could do that."  He clarified that he would need to be able to get up and move around a little.  Plaintiff agreed that he could do such a job if he had a chair or stool so he could stand up and change positions.

On examination by his counsel, Plaintiff testified that he would need to get up every 30 minutes to an hour.  He felt that he would not be able to do that eight hours a day, five days a week because "every day is going to get tougher, harder for me to withstand," with respect to his knees and being able to take breaks whenever he wanted due to fatigue and pain.

Plaintiff testified that he uses a cane every day.  R. 35-49.

## IV. DISCUSSION

### A.  Step Two Determination

As noted, Plaintiff's argument focuses exclusively on the ALJ's credibility assessment.  ECF No. 21 at 25-34.  Earlier in his brief, however, he suggests that the ALJ erred in not finding that his osteoarthritis (and other impairments not at issue in this appeal) were not severe because the ALJ's finding "directly conflicts with the disability determination and transmittal" prepared by Dr. Lipinski.  ECF No. 21 at 6.

The Eleventh Circuit, as well as numerous other circuits, have held that step two of the sequential analysis may do no more than screen out *de minimis* claims.[22]  An impairment or combination of impairments is severe at Step Two of the sequential evaluation if it significantly limits one's physical or mental ability to do basic work activities.[23]  To be considered "severe"  a medical condition must constitute more than a "deviation from

---

[22]  Stratton v. Bowen, 827 F.2d 1447, 1453 (11th Cir. 1987); see also Anthony v. Sullivan, 954 F.2d 289, 294-95 (5th Cir. 1992); Bailey v. Sullivan, 885 F.2d 52, 56-57 (3rd Cir. 1989).

[23] 20 C.F.R. § 404.1520(c).

purely medical standards of bodily perfection or normality."[24]  Although the threshold for meeting the definition of a "severe impairment" at Step Two is low, the burden is, nonetheless, on the Plaintiff to provide evidence demonstrating the disabling impact of his impairments.[25]

It is true that the disability determination cover page transmitted by the DDS examiner, Connie Griffis, lists "other unspecified arthropathy major joint dysfunction" as Plaintiff's primary diagnosis and "obesity" as the secondary diagnosis.  R. 95.  However, the disability determination explanation prepared by Dr. Lipinski identifies "obesity" as the primary diagnosis and "sleep-related breathing disorder" as the secondary diagnosis.  R. 89-94.  Further, the reconsideration determination explanation by Dr. Beecham also identifies "obesity" as the primary diagnosis and "affective disorder" as the secondary diagnosis.  R. 101.  Neither of the disability explanations by the physicians identify osteoarthritis as the primary, or even secondary, diagnosis.

In finding that Plaintiff's claimed osteoarthritis was non-severe, the

---

[24] McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986).

[25] Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

ALJ observed that the diagnostic evidence reflected normal x-ray results

and that Plaintiff took over-the-counter Aleve and was not under treatment

with a specialist.  R. 21.  The ALJ did, however, assess the effect of

Plaintiff's severe impairment of obesity on his joints and related exertional

limitations in determining his RFC.  R. 26-27.  Thus, to the extent that

Plaintiff contends that the ALJ erred at Step Two of the sequential analysis,

he has failed to show that any error warrants a remand of the decision.

### B.  Credibility Determination

Plaintiff asserts that the ALJ failed to follow the Eleventh Circuit's

credibility standard with respect to Plaintiff's pain testimony in finding

Plaintiff "not to be credible" regarding his physical limitations.  ECF No. 21

at 25.  Plaintiff then somewhat confusingly both concedes that the ALJ

found Plaintiff to be generally credible and argues that the ALJ "explicitly

rejected [Plaintiff's] credibility with little or no evidentiary . . . basis for doing

so.  *Id*. at 25, 29; *see* R. 26.  Plaintiff asserts that it is "reasonable" to

expect a person of Plaintiff's weight to develop osteoarthritis "simply from

the structural improbability of the human body being able to support such

an incredibly great weight while sitting, standing, or walking."  ECF No. 21

at 29.  He contends that it is also logical and reasonable to expect that his

size would be the cause of joint pain in his knees, hips, and lower back.

*Id*.  He argues that the ALJ did not articulate adequate reasons for finding

Plaintiff not credible regarding his need for unauthorized break time over

the course of a workday.  *Id*. at 30.

A claimant may establish his disability through his own testimony of

pain or other subjective symptoms.  *See Dyer v. Barnhart*, 395 F.3d 1206,

1210 (11ᵗʰ Cir. 2005); *Foote v. Chater*, 67 F.3d 1553, 1560–61 (11th

Cir.1995).  The ALJ must consider a claimant's testimony of pain and other

subjective symptoms where the claimant meets the Eleventh Circuit's

three-part "pain standard."  *See Foote*, 67 F.3d at 1560.  Under that test,

evidence of an underlying medical condition must exist.  *Id*.  If that

threshold is met, then there must be either objective medical evidence that

confirms the severity of the alleged pain or symptoms arising from the

underlying medical condition, or evidence that the objectively-determined

medical condition is of such a severity that it can reasonably be expected

to give rise to the alleged pain or symptoms.  *Id.*  A claimant's subjective

testimony supported by medical evidence that satisfies the pain standard is

sufficient to support a finding of disability.  *Id.* at 1561.

If the record shows that the claimant has a medically-determinable impairment that could reasonably be expected to produce his symptoms, the ALJ must evaluate the intensity and persistence of the symptoms in determining how they limit the claimant's capacity for work.  20 C.F.R. § 404.1529(c)(1).  In doing so, the ALJ considers all of the record, including the objective medical evidence, the claimant's history, and statements of the claimant and his doctors.  *Id*. § 404.1529(c)(1)-(2).  The ALJ may consider other factors, such as: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of the claimant's medication; (5) any treatment other than medication; (6) any measures the claimant used to relieve his pain or symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to his pain or symptoms.  *Id.* § 404.1529(c)(3).  The ALJ then will examine the claimant's statements regarding his symptoms in relation to all other evidence, and consider whether there are any inconsistencies or conflicts between those

statements and the record.  *Id.* § 404.1529(c)(4).

If the ALJ decides not to fully credit the claimant's testimony as to his subjective symptoms, the ALJ must articulate explicit and adequate reasons for doing so or the record must be obvious as to the credibility finding. *See Foote*, 67 F.3d at 1561–62.  While the ALJ does not have to cite particular phrases or formulations, broad findings that a claimant was incredible and could work are, alone, insufficient for the Court to conclude that the ALJ considered the claimant's medical condition as a whole.  *Id*. at 1562.  The ALJ's articulated reasons must also be supported by substantial evidence. *Jones v. Dep't of Health & Human Servs*., 941 F.2d 1529, 1532 (11th Cir.1991).  The Court will not disturb a properly articulated credibility finding that is supported by substantial evidence. *Foote*, 67 F.3d at 1562.

In this case, the ALJ applied the correct pain standard and found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of his alleged symptoms, and "his testimony regarding the intensity, persistence, and limiting effects of these symptoms is found to be *generally* credible."  R. 26 (emphasis added).  The ALJ

partially credited Plaintiff's statements based on his fairly stable work history and his admission at the hearing that he could perform some jobs (such as movie ticket seller) with the opportunity for positional changes (though he stated on examination by counsel that it was getting "tougher every day").  While crediting some of Plaintiff's statements, the ALJ concluded that his statements were nevertheless not consistent with a finding of 'disability' within the meaning of the [Act] and its implementing regulations."  R. 26.

The ALJ then went on to cite specific support in the record for his conclusions.  First, the ALJ noted that objective diagnostic testing was unremarkable, and Plaintiff had managed his right-knee pain with Aleve. The ALJ noted that Plaintiff's primary problem was his weight, which affected his joints and other systems, and that while Plaintiff admitted he had been advised to lose weight he had not done so.  The ALJ observed that there was no opinion from any treating provider regarding functional limitations or opinions of disability.  The ALJ did afford great weight to the consultative examination findings and some weight to Dr. Greenberg's opinion that limited Plaintiff to essentially light exertional work.

The ALJ also pointed to Dr. Lipinski's opinion that Plaintiff could do light work.  The ALJ summarized that she "viewed the evidence in the light most favorab[le] to the claimant including the credible portions of his testimony regarding his need for a cane and continued problems with shortness of breath . . . . to the extent that he would be appropriately limited to light work with no exposure to concentrated fumes, gases, or poorly ventilated areas with the ability to perform those jobs from a standing or seated position with the use of a cane to ambulate."  R. 27.  The ALJ thus implicitly rejected Plaintiff's assertion that he required unauthorized break time over the course of a workday, but in doing so the ALJ cited factors in the record consistent with § 404.1529(c)(3).

Therefore, because the ALJ's credibility assessment is properly articulated and supported by substantial evidence, the Court concludes that the ALJ did not err in his credibility assessment.

## V.  RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that the decision of the Commissioner should be **AFFIRMED**.

**IN CHAMBERS** this 25th day of August 2017.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## <u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.